

**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**SUNEEL J. NELSON, ESQ.**
Nevada Bar No. 12052
**Donath & Medrala Prof. LLC**
1091 S. Cimarron Road, Suite A-1
Las Vegas, Nevada 89145
(702) 475-8884
(702) 938-8625 Facsimile
jmedrala@domelaw.com
**TELIA U. WILLIAMS, ESQ.**
Nevada Bar No. 9359
**Law Office of Telia U. Williams, Esq**.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
Fax: (702) 363-8851 Facsimile
telia@telialaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BATTALION CHIEF GRANDCHILDREN's FUND, by and through its trustee ANGELINA GALLINDO on behalf of herself and the nominal defendant SRC NIGHTCLUB & GRILL, LLC; RAVEN ENTERTAINMENT, LLC on behalf of itself and on behalf of nominal defendant STONEY'S ENTERTAINMENT, INC.; and SEER CARTEL, LLC.<br><br>**Plaintiffs,**<br>v.<br>CHRISTOPHER LOWDEN; and HAROLD GRAY a.k.a. "STONEY,"<br>**Defendants,**<br>and<br>STONEY'S ENTERTAINMENT, INC.; and SRC NIGHTCLUB & GRILL, LLC,<br><br>**Nominal Defendants.** | CASE NO.:  **2:15-cv-2299**<br><br><br><br><br>**MEMBERS' AND SHAREHOLDERS' VERIFIED DERIVATIVE COMPLAINT**<br><br><br>**JURY DEMAND** |

Plaintiffs BATTALION CHIEF GRANDCHILDREN's FUND, by and through its trustee ANGELINA GALLINDO ("GALLINDO") on behalf of herself and the nominal defendant SRC NIGHTCLUB & GRILL, LLC ("SRC"); RAVEN ENTERTAINMENT, LLC ("RAVEN") on behalf of itself and on behalf of nominal defendant STONEY'S ENTERTAINMENT, INC. ("SEI"); and SEER CARTEL, LLC ("SEER CARTEL") by and through their counsel Donath & Medrala PLLC, hereby complain against the Defendants CHRISTOPHER LOWDEN ("LOWDEN") and HAROLD GRAY ("GRAY") as follows:

## I.

## NATURE OF THE ACTION

1.     This is a member and shareholder derivative action brought for the benefit of nominal defendants SRC and SEI against their controlling members, shareholders, board members, and officers LOWDEN and GRAY to remedy their breaches of fiduciary duties and waste of corporate assets arising out of their racketeering activities connected with their fraudulent and intentional misappropriation of SRC and SEI's assets, issuing false and fraudulent financial statements and other documents concerning the Nominal Defendants, gross mismanagement, and abuse of control.

2.     This action also involves GALLINDO and RAVEN, and SEER CARTEL's direct claims against LOWDEN and GRAY for common law and securities fraud.

## II.

## JURISDICTION

3.     This action arises under the statutes of the United States for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter arises as a result of alleged violations of federal law.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' stated claims for fraud and breach of fiduciary duties as they form part of the same case or controversy.

6.      Venue is proper under 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the District of Nevada. Further, venue is proper because the Defendants do business in the District of Nevada.

**III.**

**PARTIES**

7.      Plaintiff GALLINDO currently is and at all relevant times was a resident of Clark County, Nevada. At all relevant times, GALLINDO is and was a member of Defendant SRC.

8.      Plaintiff RAVEN is a domestic limited liability company with its principal place of business in Clark County, Nevada. Initially, RAVEN was a Class A member of Nominal Defendant SRC and, thereafter, a shareholder of Nominal Defendant SEI.

9.      Plaintiff SEER CARTEL is an Ohio limited liability company. SEER CARTEL was a member of a now defunct entity STONEY'S EVANSVILLE, LLC.  ("STONEY'S EVANSVILLE").

10.     Nominal Defendant SRC is a domestic limited liability company with its principal place of business in Clark County, Nevada.

11.     Nominal Defendant SEI is a domestic corporation with its principal place of business in Clark County, Nevada.

12.     Defendant GRAY currently is and at all relevant times was a resident of Clark County, Nevada. Since 2006, he has been a majority member, manager, and director of SRC and STONEY'S EVANSVILLE and later a majority shareholder, director, and President of SEI.

13.     Defendant LOWDEN currently is and at all relevant times was a resident of Clark County, Nevada. At all times alleged herein, LOWDEN was a member, director, and manager of SRC and STONEY'S EVANSVILLE and later a shareholder, director, and officer of SEI.

14.     Upon information and belief, at all relevant times, Defendants were the agents and employees of the other Defendants and were acting in the course and scope of their employment and/or agency.

### IV.

### GENERAL ALLEGATIONS

15.     On or about October 9, 2006, Defendant GRAY organized Nominal Defendant SRC for the stated purpose of conducing a nightclub and bar business at the premises located at 9155 S. Las Vegas Blvd., Suite 300, Las Vegas, Nevada 89123 ("Stoney's").

16.     Allegedly, in order to finance the business operations of Stoney's, GRAY, by way of private security offering, and in violation of federal and state laws, caused SRC to offer to the public 50 units of membership interest in SRC at the price of $50,000 per unit.

17.     Relying on GRAY's representations made by him in the "First Amended Confidential Private Placement Memorandum SRC-Nightclub and Grill, LLC," which stated, among other things, that the money raised through the offering will be used solely to finance Stoney's business operations, Plaintiff GALLINDO bought 1 membership Unit in SRC at the price of $50,000.

18.     In addition, GRAY and SRC sold the remaining 49 membership Units to various other investors, including one CLINT LAWSON ("LAWSON") who acquired 3 membership Units of Class A membership.

19.     Thereafter, on June 8, 2009, Plaintiff RAVEN acquired from LAWSON the said 3 membership Units in SRC, thus becoming an SRC's Class A member.

20.     Nevertheless, between 2008 and 2012, and after raising over $2.5 million from private investors, GRAY and LOWDEN used the majority of the investment to finance their extravagant lifestyle, which included private expenses such as cars, UTVs, jet flights, vacations, and various enterprises that they owned and controlled but in which SRC either did not have any interest at all or did not receive adequate compensation in exchange for its investment.

21.     For instance, with the money received from SRC's investors in 2009 and 2010 in Las Vegas, Nevada, GRAY and LOWDEN financed their private car-racing company, Chapman Racing Products, LLC, d/b/a WICKED HP, in which SRC did not acquire any beneficial interest at all.

22.     In addition, while controlling and managing SRC, GRAY and LOWDEN unlawfully issued membership interests, without consideration, to various individuals and entities to pay off their own personal debts or to simply benefit their friends and family at the expense of the SRC investors.

23.     Between 2009 and 2012, GRAY and LOWDEN also issued to themselves, their friends, and their families unauthorized cash advances from SRC using interstate mail and wire.

24.     Moreover, to cover up their fraudulent and intentional activities, GRAY and LOWDEN issued to SRC's investors false financial statements, K-1s, and equity statements.

25.     For instance, without limitation, at least on one occasion, GRAY and LOWDEN issued a K-1 statement to RAVEN in which they stated that RAVEN received a distribution when in fact it did not.

26.     Moreover, immediately after receiving the $2.5 million investment in SRC, GRAY and LOWDEN authorized small "distributions" to some investors—the distributions that were financed from other investors' money. Any such "distribution," however, was unlawfully accounted for by LOWDEN and GRAY to be a "return of capital" that reduced these investors' capital account by the amount of such distribution.

27.     In addition, between 2009 and 2012, LOWDEN and GRAY misappropriated from SRC tens of thousands of dollars in cash that was collected by SRC as cover charges at Stoney's and that was not accounted for in company books or reported to the Internal Revenue Service ("IRS").

28.     As a result of these fraudulent activities, SRC became insolvent.

29.     Nevertheless, to cover their fraud at SRC, LOWDEN and GRAY created another company, SEI, and in August 2012 offered the previous SRC's investors a membership-interest swap for SEI's shares. They also issued several SEI's shares to new investors. This equity swap and share offering was done in violation of both federal and state laws requiring registration of shares offered for public sale.

30.     The equity-swap offering was done pursuant to an offer to enter into a "Member Share Transfer and Exchange Agreement for SRC Nightclub & Grill, LLC, and Stoney's Entertainment, Inc.," LOWDEN's fraudulent representations as to the financial condition of SEI, and the implied threat that absent the execution of the equity-swap agreement, the SRC's

investors will lose the value of their investment due to Stoney's planned closing in October 2012.

31.    Relying on LOWDEN's representations as to SEI's financial condition, on August 2, 2012, RAVEN signed the equity-swap agreement, thus becoming a shareholder of SEI.

32.    Nevertheless, the Plaintiff GALLINDO refused to sign the agreement and subsequently lost her investment in SRC due to Stoney's closing its doors and SRC failing to renew its business license with the Nevada Secretary of State.

33.    GALLINDO has never received a closing K-1 from SRC, or any other statement concerning the distribution or application of her $50,000 investment in SRC. Her continuing inquiries to LOWDEN and GRAY regarding her investment remain unanswered.

34.    After the equity-swap agreement, LOWDEN and GRAY engaged in the same scheme to defraud the investors—this time the SEI's investors—as they perpetuated at SRC. Namely, they engaged in misappropriation of cash from the company's bank account, they paid out various and unlawful advances to themselves, their friends, and their families, they financed (in exchange for little or no beneficial interest at all) with SEI's money various other companies and business activities belonging to them, their friends, or their families, such as Rockin' Taco, Stoney's North Forty, Warehouse, Vegas Vic's, Wicked HP, and many others. Again, they continued to finance their lavish lifestyle with SEI's money and intentionally misappropriated hundreds of thousands of dollars belonging to SEI for their own benefit at the expense of SEI's shareholders.

35.    To further cover up their fraudulent activities at SEI, LOWDEN and GRAY continued to issue on SEI's behalf false K-1s showing distributions to shareholders where none

were made, they issued financial statements misrepresenting the nature of SEI's growing expenses, or they simply refused to provide any information concerning SEI's financial affairs.

36.     As a result of LOWDEN and GRAY's fraudulent activities, SEI became completely insolvent and closed its doors sometime in 2013.

37.     Before SEI closed its doors, however, LOWDEN and GRAY tacitly "paid off" from SEI's funds some selectively picked investors, mostly their friends and families.

38.     Upon information and belief, LOWDEN and GRAY sold SEI's remaining assets to SRC 1, LLC, d/b/a Las Vegas Bull, and distributed the proceeds from the sale among themselves.

39.     In addition, SRC's and SEI's intangible assets, such as their service marks, were given to entities owned and controlled by LOWDEN's family such as Archon Corporation for no consideration.

40.     Neither SRC nor SEI's investors have ever received their final K-1s or any other statements showing how SRC's or SEI's remaining assets were distributed after the companies practically ceased to exist.

41.     Moreover, on or about September 16, 2019, Defendant GRAY and LOWDEN organized STONEY'S EVANSVILLE for the stated purpose of conducing a nightclub and bar business in Evansville, Indiana.

42.     In 2010, in Las Vegas, Nevada, allegedly, in order to finance the business operations of STONEY'S EVANSVILLE, LOWDEN and GRAY, by way of private security offering and in violation of federal and state laws, caused STONEY'S EVANSVILLE to offer to the public units of membership interest at the price of $50,000 per unit.

43.     Relying on LOWDEN and GRAY's representations," which stated, among other things, that the money raised through the offering will be used solely to finance STONEY'S EVANSVILLE business operations, Plaintiff SEER CARTEL bought 1 membership Unit in STONEY'S EVANSVILLE at the price of $50,000.

44.     Nevertheless, between 2010 and 2012, yet again, and after raising hundreds of thousands of dollars from private investors, GRAY and LOWDEN used the majority of the investment to finance their extravagant lifestyle, private expenses such as cars, UTVs, jet flights, vacations, and various enterprises which they owned and controlled, but in which STONEY'S EVANSVILLE either did not have any interest.

45.     For instance, with the money received from STONEY'S EVANSVILLE's investors, in 2010, in Las Vegas, Nevada, GRAY and LOWDEN financed their private car racing company, Chapman Racing Products, LLC d/b/a WICKED HP in which STONEY'S EVANSVILLE did not acquire any beneficial interest at all.

46.     In addition, while controlling and managing STONEY'S EVANSVILLE, GRAY and LOWDEN, unlawfully issued membership interests, without consideration, to various individuals and entities to pay off their own personal debts, or to simply benefit their friends and family at the expense of the investors.

47.     Between 2009 and 2012, GRAY and LOWDEN also issued to themselves, their friends and family, unauthorized cash advances from STONEY'S EVANSVILLE using interstate mail and wire.

48.     At the time of making the representations described in Paragraph 42 above, GRAY and LOWDEN knew or believed that their representations were false, and they intended to induce SEER CARTEL to acquire a membership interest on STONEY'S EVANSVILLE in

exchange for their investment. SEER CARTEL relied on these representations and sustained damages as the result of its reliance.

49.     Due to LOWDEN's and GRAY's attempts to conceal their fraudulent activities as described above, the Plaintiffs did not learn about them until December 5, 2012 when one of LOWDEN and STONEY's creditors and former GRAY's friend Nathan Schweigart, informed the SCR, and SEI investors about the fraudulent scheme.

**V.**

## DERIVATIVE NATURE OF THE COMPLAINT AND
## FUTILITY OF DEMAND ALLEGATIONS

50.     Plaintiffs GALINDO and RAVEN bring this action in their personal capacities, AND derivatively in the right and for the benefit of SRC and SEI to redress injuries suffered, and to be suffered, by SRC and SEI as a direct result of breach of the Defendants' racketeered and fraudulent acts, breach of fiduciary duties, waste of corporate assets, and unjust enrichment by the Defendants. SRC and SEI are named as nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

51.     Plaintiffs will adequately and fairly represent the interests of SRC and SEI in enforcing and prosecuting their rights.

52.     Plaintiff GALLINDO is a member of SRC and Plaintiff RAVEN is a shareholder of SEI. Plaintiffs were members and shareholders of SRC and SEI respectively at the time of the wrongdoings of which they complain, and they have continuously been members and shareholders, as the case may be, of SRC and SEI.

53.     The current boards of both SRC and SEI consist only of the Defendants LOWDEN and GRAY. Plaintiffs have not made a formal demand on the present boards to institute this action because such a demand would be a futile, wasteful, and useless act as set forth below.

54.     The only board members of SRC and SEI are the Defendants LOWDEN and GRAY, who orchestrated, participated, performed, and ratified the acts complained of in this Complaint. Neither SRC nor SEI's board consists of any other directors who could be capable of an impartial consideration of the demand. All of the SRC's and SEI's board members are interested in the decision not to act on the demand and are incapable of exercising an independent and disinterested business judgment in responding to such a demand.

## VI.

## FIRST CLAIM FOR RELIEF—RICO

## (18 U.S.C. §§ 1961-1968—Civil RICO and NRS 207.470)

55.     Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

56.     Since approximately 2009, LOWDEN and GRAY have engaged in a fraudulent scheme to deprive GALLINDO, RAVEN and SEER CARTEL and others of money and/or intangible assets by means of soliciting funds, purportedly as an investment in SRC, SEI and STONEY'S EVANSVILLE but which LOWDEN and GRAY instead appropriated to support their lavish personal expenditures.

57.     LOWDEN and GRAY falsely represented in a "First Amended Confidential Private Placement Memorandum," among other things, that the substantial investment monies that they raised for SRC through the offering would be used solely to finance Stoney's.

58. In addition, while controlling and managing SRC, GRAY and LOWDEN unlawfully issued membership interests, without consideration, to various individuals and entities to pay off their own personal debts, or to simply provide a benefit to their friends and families at the expense of bona fide investors.

59. LOWDEN and GRAY also issued to themselves, their friends, and their family members unauthorized and illicit cash advances from SRC, SEI and STONEY'S EVANSVILLE.

60. To conceal their fraudulent activities, LOWDEN and GRAY issued and mailed to investors false financial statements, K-1s, and equity statements.

61. Moreover, immediately after receiving a $2.5 million investment in SRC, LOWDEN and GRAY unlawfully, or at least illicitly, accounted for distributions that it made to some investors as a "return of capital," when in fact LOWDEN and GRAY approximated a pyramid-like scheme, whereby they reduced the investors' capital by the amount of each distribution, capital invested from other investors.

62. Later, in or near August 2012, LOWDEN and GRAY created a new company, SEI, and coerced and/or swindled SRC investors into swapping their shares for a membership-interest in SEI. LOWDEN and GRAY also issued several SEI shares to new investors.

63. At no point did LOWDEN or GRAY ever divulge that this swap for SEI's shares violated federal and state laws requiring registration of sales offered for public sale. Indeed, LOWDEN and GRAY deliberately sidestepped their legal obligations in order to financially exploit its investors.

64. Moreover, LOWDEN and GRAY made false representations about the financial condition of SEI to their investors, including GALLINDO and RAVEN, deceiving them with an

DERIVATIVE COMPLAINT

implied threat that absent their cooperation with the equity swap arrangement, GALLINDO and RAVEN would lose the value of their investment due to the purported closing of Stoney's in October 2012.

65.    But even after deceiving GALLINDO, RAVEN, and the other investors into cooperating with an equity-swap arrangement, LOWDEN and GRAY did not relent in defrauding them, this time with respect to SEI, rather than SRC.

66.    LOWDEN and GRAY's deliberate omissions, pursuant to written announcements and/or solicitations, were also made by way of written communications and sent by wire and/or mail.

67.    As a result of LOWDEN and GRAY's actions and omissions in furtherance of their scheme, plaintiffs GALLINDO and RAVEN irrevocably lost substantial funds and assets.

68.    Also as a result of LOWDEN and GRAY's actions and omissions in furtherance of their scheme, SEI was rendered insolvent and stopped operating.

69.    In performing these aforementioned acts, LOWDEN and GRAY used the United States mail, telephone, electronic communications, and/or an interstate communications to facilitate their scheme.

70.    "Mail fraud" consists of the use of any fraudulent scheme to intentionally deprive another of property or legitimate services, and/or in furtherance of the scheme, relying in any way upon the United States mail, or making any false representations by means of the United States mail.

71.    "Wire fraud" consists of the use of any fraudulent scheme to intentionally deprive another of property or legitimate services, and/or in furtherance of the scheme, relying

in any way upon telephone communications, electronic communications, or an interstate communications facility.

72.     The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. sections 1961-1968 is directed at "racketeering" activity, defined in section 1961(1) to encompass, *inter alia*, acts "indictable" under specific federal criminal provisions, including mail and wire fraud.

73.     18 U.S.C. section 1964(c) prohibits conducting or participating in the conduct of an enterprise "through a pattern of racketeering activity." This section also provides for a private civil right of action for any person injured in his or her business or property "by reason of a violation of section 1962," to recover *treble* damages.

74.     GALLINDO, RAVEN and SEER CARTEL have been injured, as described above, by reason of LOWDEN and GRAY's violation of section 1962 and, thus, may prosecute their claims against the defendants pursuant to RICO for treble damages.

75.     Nevada law also provides for a civil right of action for racketeering, with the predicate acts of wire and/or mail fraud, pursuant to Nevada Revised Statutes (NRS) 207.470.

76.     As described above, LOWDEN and GRAY have engaged in several illicit and illegal predicate acts or crimes related to racketeering as defined in NRS 207.360, including embezzlement of money or property valued at $250 or more, obtaining possession of money or property valued at $250 or more by false pretenses, and/or taking property from another under circumstances not amounting to robbery.

77.     LOWDEN and GRAY have, with criminal intent, received investment proceeds from racketeering activity as set forth herein, and they used those proceeds for their own personal use and/or to invest in other companies in violation of NRS 207.400(1)(a).

78.     As a direct and proximate result of LOWDEN and GRAY's wrongful actions, Plaintiffs have suffered and will continue to suffer damages, the exact amount to be determined at trial.

79.     LOWDEN and GRAY's wrongful actions were done with improper motives and with willful, wanton, or reckless disregard of GALLINDO, RAVEN and SEER CARTEL's rights, or were done oppressively or with malice. GALLINDO, RAVEN and SEER CARTEL are, therefore, are entitled to punitive and treble damages.

80.     Plaintiffs have suffered additional damages in the form of attorney fees as a proximate and foreseeable result of LOWDEN and GRAY's wrongful actions.

## VII.

## SECOND CLAIM FOR RELIEF—BREACH OF FIDUCIARY DUTIES

81.     Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

82.     As members of SRC and STONEY'S EVANSVILLE, majority shareholders of SEI and directors and officers of SRC, SEI and STONEY'S EVANSIVLEE, LOWDEN and GRAY owe SEI, SRC, and Plaintiffs fiduciary obligations. Each company's by-laws, articles of incorporation, other company papers, as well as the common law specifically set forth the duties of loyalty, care, and good faith that LOWDEN and GRAY—comprising the entirety of the companies' Board of Directors—are required to fulfill on behalf of the company. The violation and/or omission of any of these duties constitutes a breach of fiduciary duty.

83.     Under Nevada law, the board bears ultimate responsibility for the management of the company. NRS 78.120 provides that "the board of directors has full control over the affairs of the corporation."

84.     Nevada law also places limits on directors' discretion so that corporations might act lawfully and serve the interest of their shareholders. NRS 78.138 provides, "Directors and officers shall exercise their powers in good faith and with a view to the interests of the corporation."

85.     The common law fiduciary duties of loyalty, care, and good faith require directors and officers to strictly avoid any conflict between duty and self-interest. Undivided allegiance to the corporation's best interest is required.

86.     The SRC, STONEY'S EVANSVILLE and SEI's board, consisting of LOWDEN and GRAY who were also SRC and STONEY'S EVANSVILLE's members and SEI's majority shareholders, has breached its fiduciary duty by, among other things, self-dealing and using their position for personal profit at the expense of the company.

87.     The board has done so by unlawfully issuing membership interests, without consideration, to various individuals and entities to pay off their personal debts, and/or to simply benefit their friends and families at the expense of investors.

88.     The board has issued to themselves, their friends, and family members unauthorized cash advances.

89.     The board has issued to investors false financial statements, K-1s, and equity statements.

90.     The board has facilitated a "pyramid" scheme, by having authorized "distributions" to some investors using other investors' money.

91.     The board has refused to provide investors, particularly GALLINDO, with a closing K-1 from SRC or any other statement concerning the distribution or application of her $50,000 investment in SRC.

92.     The board has coerced and deceived investors, including the plaintiffs, GALLINDO and RAVEN, into swapping their shares for shares in another company in order to appropriate additional monies for the board's own use.

93.     The board has misappropriated tens of thousands of dollars from one or all of the companies' that they serve and that comprise the nominal defendants in this case.

94.     The board has misappropriated cash from the company's bank account, paid out various and unlawful advances to themselves, their friends, and family members, and have financed without consideration, using SEI's funds, various *other* companies and business activities belonging to them, their families, or friends, as described herein.

95.     After forcing the insolvency of SEI, the board appropriated some of its funds and selectively paid some of its investors, namely their friends and family members. The rest of the funds and/or assets of SEI the board sold and distributed to itself (i.e., LOWDEN and GRAY).

96.     The board gave, without consideration, to entities controlled by LOWDEN's family, intangible assets belonging to SRC, STONEY'S EVANSVILLE and SEI, including their trademarks, service marks, and/or other intellectual property and/or good will.

97.     The board failed to renew respective business licenses with the Nevada Secretary of State.

98.     By all of these actions and/or omissions, the board has breached its fiduciary duty with respect to loyalty, care, and good faith towards SRC, SEI, STONEY'S EVANSVILE, GALLINDO, RAVEN, SEER CARTEL and other members and shareholders. The board has also breached its fiduciary duty by failing to establish and maintain adequate internal controls to ensure that SRC, STONEY'S EVANSVILLE and SEI are operated in a prudent and lawful manner.

99.     Among other things, the board also has a duty to ensure that members and shareholders have truthful and complete financial statements from validly issued and registered shares of restrictive common stock. The board's continuing failure to do so constitutes a breach of its fiduciary duties.

100.     The board's behavior in paying itself, its friends, and families, and entities connected with its friends and families, constitutes an egregious breach of fiduciary duty and attenuates any appeal that the board may make to reasonable business judgment.

101.     The board has knowingly participated in, approved, and permitted the wrongs and/or conflicts of interest and breach of fiduciary duties herein to have occurred, and the board has benefited from the wrongdoing. As such, the board is not entitled to the protection of the business judgment rule.

102.     As a direct and proximate result of LOWDEN and GRAY's breach of fiduciary duties as described above, Plaintiffs and Nominal Defendants have suffered and will continue to suffer damages, the exact amount to be determined at trial.

103.     As a further proximate result of LOWDEN and GRAY's breach of fiduciary duties as described above, Plaintiffs and Nominal Defendants are entitled to punitive damages in an amount to be proved at trial.

104.     Plaintiffs and Nominal Defendants have suffered additional damages in the form of attorney fees as a proximate and foreseeable result of LOWDEN and GRAY's breach.

**VIII.**

**THIRD CLAIM FOR RELIEF—INTENTIONAL MISREPRESENTATION (FRAUD)**

105.     The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

106.   LOWDEN   and   GRAY   ostensibly   organized   SRC   and   STONEY'S EVANSVILLE in order to operate nightclub and bar businesses.

107.   LOWDEN and GRAY, by way of private security offering, and in violation of federal and state laws, caused SRC and STONEY'S EVANSVILLE to offer to the public units of membership interests in SRC and STONEY'S EVANSVILLE at the price of $50,000 per Unit.

108.   LOWDEN and GRAY misrepresented to the plaintiffs, among others, by means of a written document, "First Amended Confidential Private Placement Memorandum SRC-Nightclub and Grill, LLC," that the money that LOWDEN and GRAY raised would be used solely to finance STONEY'S and STONEY'S EVANSVILLE.

109.   GALLINDO relied upon LOWDEN and GRAY's misrepresentation, purchasing 1 membership Unit in SRC at the price of $50,000.

110.   RAVEN relied upon LOWDEN and GRAY's misrepresentation, purchasing 3 membership Units in SRC, becoming a Class A member of SRC.

111. SEER CARTEL relied upon LOWDEN and GRAY's misrepresentation, purchasing 1 membership units in STONEY'S EVANSVILE, becoming its member.

112.   Contrary to their representations to GALLINDO, RAVEN and SEER CARTEL, and after raising over $2.5 million from various private investors (including GALLINDO, RAVEN, and SEER CARTEL), LOWDEN and GRAY appropriated the majority of the investments for their extravagant, personal expenses, including their luxury vehicles, UTVs, jet flights, vacations, and diverse enterprises that LOWDEN and GRAY owned and/or controlled (including a private car-racing company), but in which SRC and STONEY'S EVANSVILLE

either did not have an interest at all, or from which SRC and STONEY'S EVANSVILLE did not receive adequate compensation in exchange for its investment.

113.   LOWDEN and GRAY, also while controlling and managing SRC and STONEY'S EVANSVILLE, unlawfully issued membership interests, without consideration, to themselves and various individuals and entities to pay off their personal debts, and/or to lavish financial gains upon their friends and family members. All of this was done at the expense of their investors.

114.   LOWDEN and GRAY also issued to SRC and STONEY'S EVANSVILLE's investors, false financial statements, K-1s, and equity statements, to create the impression that the companies were doing better than they actually were, and that "distributions" were being made to investors.

115.   The distributions were unlawfully accounted for, however, and were not actually a return of capital to investors, but were actually financed from other investors' money, as in a "pyramid" scheme.

116.   LOWDEN and GRAY misappropriated from SRC and STONEY'S EVANSVILLE thousands of dollars that they collected as cover charges, and they did not account for them in the companys' books.

117.   As a result of these fraudulent activities, which took place between 2009 and 2012, SRC and STONEY'S EVANSVILLE became insolvent.

118.   Undeterred, LOWDEN and GRAY created *another* company, SEI, and then offered SRC's investors a membership-interest swap for SEI's shares and issued several SEI shares to new investors without registering them, violating both federal and state laws in the process.

119.   LOWDEN and GRAY fraudulently misrepresented the financial condition of SEI, and relying upon this, RAVEN became a shareholder of SEI.

120.   GALLINDO did not agree to become a shareholder of SEI and never received any communication from LOWDEN and/or GRAY regarding the status of her investment in SRC.

121.   Both GALLINDO and RAVEN have lost substantial assets and business opportunities as a result of LOWDEN and GRAY's misconduct.

123.   Fraudulent or intentional misrepresentation occurs where a defendant makes a false representation that defendant knew or believed was false, or where defendant had an insufficient basis of information for making the representation.

124.   Defendants intended to induce Plaintiffs to act or refrain from acting upon the misrepresentation, Plaintiffs justifiably relied upon Defendants' representation, and Plaintiffs sustained damages as a result.

125.   As described above, LOWDEN and GRAY made several false representations that they knew or believed to be false, including the financial stability of the company for which they solicited investments, and the ultimate ends of such investments, which largely went to fund their extravagant personal expenses, and not the company.

126.   LOWDEN and GRAY intended to induce GALLINDO, RAVEN and/or SEER CARTEL to invest in SRC, STONEY'S EVANSVILLE, and/or SEI, and/or to make the equity swap from SRC to SEI. Plaintiffs justifiably relied upon LOWDEN and GRAY's false representations, by investing in the companies and/or engaging in an equity swap of their investment interest, which caused both of them to lose substantial assets and/or money.

127.   As a result of LOWDEN and GRAY'S intentional misrepresentations, Plaintiffs have suffered and will continue to suffer damages, the exact amount to be determined at trial.

128.    As a further proximate result of LOWDEN and GRAY'S intentional misrepresentations, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

**IX.**

**FOURTH CLAIM FOR RELIEF—UNJUST ENRICHMENT**

129.    Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

130.    By using funds for their personal use that were intended as investments for SRC, STONEY'S EVANSVILLE and/or SEI, LOWDEN and GRAY unjustly retained the money or property of another, GALLINDO, RAVEN, SEER CARTEL, SRC, and/or SEI.

131.    LOWDEN and GRAY retained GALLINDO, RAVEN, SEER CARTEL, SRC, and/or SEI's money or property against fundamental principles of justice or equity and good conscience.

132.    The value of the money and property unjustly retained by LOWDEN and GRAY will be determined at trial.

133.    In addition, Plaintiffs and Nominal Defendants have suffered damages in the form of attorney fees as a proximate and foreseeable result of LOWDEN and GRAY's unjust retention of the money and property of Plaintiff and/or Nominal Defendants.

**X.**

**FIFTH CLAIM FOR RELIEF—CIVIL CONSPIRACY**

134.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

135.   Civil conspiracy consists of defendants, acting in concert, intending to accomplish an unlawful objective for the purpose of harming plaintiff, and plaintiff sustains damage resulting from defendant's act or acts.

136.   LOWDEN and GRAY acted in concert to deceive and delude investors, including GALLINDO, RAVEN and SEER CARTEL regarding the viability of the subject companies, SRC, STONEY'S EVANSVILLE and/or SEI, in order to persuade them to invest in the companies so that LOWDEN and GRAY could use the investment monies for their own personal ends.

137.   LOWDEN and GRAY together issued fraudulent financial documentation with respect to the companies and/or failed to properly register and/or account for shares in the companies in order to achieve their ends.

138.   LOWDEN and GRAY together acted in concert to breach their fiduciary duties toward SRC and SEI as described above.

139.   Such conduct was patently unlawful under both federal and state law.

140.   LOWDEN and GRAY thus acted in concert, and evidently intended to accomplish an unlawful objective of defrauding the investors, including GALLINDO, RAVEN, and SEER CARTEL for the purpose of harming GALLINDO, RAVEN, and SEER CARTEL among other investors, and for the purpose of harming Nominal Defendants SRC and SEI.

141.   As a direct and proximate result of LOWDEN and GRAY's conspiracy, GALLINDO, RAVEN, SEER CARTEL, SRC, and/or SEI sustained damages in an amount to be determined at trial.

142.   As a further proximate result of LOWDEN and GRAY's conspiracy, Plaintiffs and/or Nominal Defendants are entitled to punitive damages in an amount to be proved at trial.

DERIVATIVE COMPLAINT

## XI.

### SIXTH CLAIM FOR RELIEF—ACCOUNTING

143.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

144.    As a result of the business relationship between and among GALLINDO, RAVEN, SEER CARTEL and defendants, LOWDEN and GRAY, the latter undertook a duty to maintain funds and assets on behalf of SRC, STONEY'S EVANSVILLE and/or SEI, on behalf of the Nominal Defendants and/or investors, including GALLINDO, RAVEN and SEER CARTEL for their own benefit.

145.    To date, LOWDEN and GRAY have refused to openly and fully account for the funds and assets that they misappropriated and/or mishandled, and they have further failed and/or refused to distribute the proper monies to GALLINDO, RAVEN and SEER CARTEL.

146.    SRC, SEI, GALLINDO, RAVEN, SEER CARTEL as members and minority shareholders of SRC, SEI, and STONEY'S EVANSVILLE are entitled to an accounting and their share of the funds and assets that LOWDEN and GRAY have misappropriated and/or mishandled.

## XII.

### SEVENTH CLAIM FOR RELIEF—SECURITIES FRAUD

### (Violations of Securities Act Section 17(a); 15 U.S.C. § 77q(a))

147.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

148.    As herein described, LOWDEN and GRAY directly or indirectly, knowingly, recklessly, or negligently, in the offer or sale of securities in SRC, STONEY'S EVANSVILLE

and SEI, by use of the means or instruments of transportation or communication in interstate commerce, or by use of the mail, have each: (a) employed devices, schemes, or artifice to defraud; (b) obtained money or property by means of untrue statement of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon purchasers SRC, STONEY'S EVANSVILLE and/or SEI securities.

149.   By engaging in the conduct alleged above, LOWDEN and RAVEN each violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

150.   As a direct and proximate result of the Defendants' violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Plaintiffs have suffered damages in an amount to be determined at trial.

## XIII.

## EIGHTH CLAIM FOR RELIEF—SECURITIES FRAUD

## (Violations of Exchange Act Section 10(b); 15 U.S.C. § 78j(b))

151.   The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

152.   LOWDEN and GRAY directly or indirectly, knowingly, recklessly, or negligently, in the offer or sale of securities in SRC, STONEY'S EVANSVILLE and SEI, by use of the means or instruments of transportation or communication in interstate commerce, or by use of the mail, have each: (a) employed devices, schemes, or artifice to defraud; (b) obtained money or property by means of untrue statement of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which

DERIVATIVE COMPLAINT

they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon purchasers SRC and/or SEI securities.

153.    By engaging in the conduct alleged above, LOWDEN and GRAY each violated Exchange Act section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

154.    As a direct and proximate result of the Defendants' violations of Exchange Act section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5], Plaintiffs have suffered damages in an amount to be determined at trial.

**XIV.**

**<u>NINTH CLAIM FOR RELIEF—SECURITIES FRAUD</u>**

**(Violations of Exchange Act Rule 13b2-2; 17 C.F.R. § 240.13b2-2)**

155.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

156.    LOWDEN and GRAY directly or indirectly (i) made or caused to be made materially false or misleading statements or (ii) omitted to state, or caused others to omit to state, material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with the filing of a document or report required to be filed with the Securities and Exchange Commission (SEC).

157.    By engaging in the conduct alleged above, LOWDEN and GRAY each violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

158.    As a direct and proximate result of the Defendants' violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2], Plaintiffs have suffered damages in an amount to be determined at trial.

## XV.

## TENTH CLAIM FOR RELIEF—SECURITIES FRAUD

### (Violations of Exchange Act Rule 13(b)(2)(A) and 13(b)(2)(B))

159.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here.

160.    Exchange Act Section 13(b)(2)(A) requires issuers to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the issuer's assets. Exchange Act 13(b)(2)(B) requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that, among other things, transactions are recorded as necessary to permit the preparation of financial statements in conformity with U.S. GAAP and to maintain accountability for the issuer's assets.

161.    LOWDEN and GRAY violated Section 13(b)(2)(A) during fiscal years 2009 through 2015 as alleged above. Likewise, by having insufficient internal controls to prevent the recording of erroneous, misleading, and outright fraudulent entries, LOWDEN and GRAY did not prepare its financial statements in accordance with U.S. GAAP and, thus, violated Section 13(b)(2)(B).

162.    As a direct and proximate result of the Defendants' violations of Exchange Act Rule 13(b)(2)(A) and 13(b)(2)(B), Plaintiffs have suffered damages in an amount to be determined at trial.

## XVI.

## **JURY DEMAND**

163.    Plaintiffs hereby demand a trial by jury on all issues described in this Complaint.


WHEREFORE, the Plaintiffs request that this Court:

       1.    Finds in favor of Plaintiffs and against Defendants, and each of them;

       2.    Awards Plaintiffs and Nominal Defendants compensatory damages;

       3.    Awards Plaintiffs and Nominal Defendants punitive damages;

       4.    Awards Plaintiffs and Nominal Defendants attorney fees and costs to Plaintiffs;

       5.    Awards such other relief as the Court may deem just and appropriate.

DATED this 5th day of December 2015.

_____
**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**SUNEEL J. NELSON, ESQ.**
Nevada Bar No. 12052
**Donath & Medrala Prof. LLC**
1091 S. Cimarron Road, Suite A-1
Las Vegas, Nevada 89145

**TELIA U. WILLIAMS, ESQ.**
Nevada Bar No. 9359
**Law Office of Telia U. Williams, Esq**.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Plaintiffs*

DERIVATIVE COMPLAINT

## VERIFICATION

I, Richard Mell, declare under the penalty of perjury:

I am the managing member of Raven Entertainment, LLC, ("Raven") a Plaintiff in this action. Raven Entertainment is a shareholder of STONEY'S ENTERTAINMENT, INC and a former member of SRC NIGHTCLUB & GRILL, LLC, and have been during the relevant period described in the Complaint. I certify under penalty of perjury that I have read and reviewed the above Complaint and authorized its filing. Based upon Raven's and Raven's Counsel's investigation, the contents of the Complaint are true to the best of my knowledge, information and belief.

Dated this 5th day of December 2015.

Raven Entertainment, LLC

By:

**Richard Mell, Managing Member**

DERIVATIVE COMPLAINT

**VERIFICATION**

I, Angelina Galindo, declare under the penalty of perjury:

I am the trustee of BATTALION CHIEF GRANDCHILDREN's FUND, a Plaintiff in this action. I am a member of SRC NIGHTCLUB & GRILL, LLC, and have been during the relevant period described in the Complaint. I certify under penalty of perjury that I have read and reviewed the above Complaint and authorized its filing. Based upon my and my counsel's investigation, the contents of the Complaint are true to the best of my knowledge, information and belief.

Dated this 5th day of December 2015.

By: _____
Angelina Galindo

DERIVATIVE COMPLAINT